The first case of the afternoon, in re the Marriage of Fahnders, 410106, for the appellate Ms. Gordon and for the appellee Ms. Asher, you may proceed. May it please the court, counsel. My name is Kelly Gordon and I represent the respondent, appellant Don Fahnders. Today we present two issues to this court. The first issue is whether or not the trial court correctly appropriated the college expenses of the minor child Alex, or the emancipated child Alex, and two, whether the trial court erred in awarding attorney's fees. The parties in this matter are Don and Lori Fahnders. They were married in 1983. They had two children, Nick and Alex. At the time of the trial, Nick was going to Bradley and was a senior. Alex was a freshman at Western Kentucky University. The parties originally had joint custody with mom, having primary residential custody of both children. In 2005, Nick went to live with his father. At that time, child support was reduced since each party had one child. In 2006, Nick, the oldest child, began attending Bradley University. At that time, the parties came to an agreement with regards to child support and the college expenses of Nick. Specifically, Lori was not going to ask for an increase in child support for Alex, and Don agreed to pay two-thirds of the college expenses for Nick. When Alex graduated in 2009, he decided that he would attend Western Kentucky University. Both parties believed that this was an appropriate school for Alex. Don Fahnders is employed with Commonwealth Edison and has been employed there since 2008. In 2009, his taxes showed that he earned approximately $111,000 gross. Lori is employed with the Attorney General's Office. She earns approximately $56,000 per year. Lori is also remarried and Larry, the husband, earns approximately $4,000 per month. The first issue is whether or not the trial court erred in the allocation of college expenses. The standard of review for such an issue is abuse of discretion. Under Section 513 of the Illinois Marriage and Dissolution of Marriage Act, there are four factors that the court looks at in determining the allocation of college expenses. The first factor, and the focus of this appeal, is the financial resources of the parties. The second factor is the standard of living that the child would have enjoyed if the parties were still married. The third factor is the financial resources of the child, and the fourth factor is the child's academic performance. When looking at the financial resources of both parties, the trial court can also look towards Lori's new spouse, Larry, and see how much money he makes. How does that work? I'm sorry? How does that work? The trial court can say, well, your husband makes this much, so we're going to change the support because of that? Well, with the college expenses, when the court looks at the financial resources of both parties, with both the court and the Second District and Third District, Street and Drish have said, since there's money coming into the household and that money is used to pay expenses, then the new spouse's income can also be looked at. Did that answer your question? In this case, if you look at the tax returns of both parties in 2009, it shows that Don's was $111,000, and Lori and Larry's was $117,000. So Lori and Larry actually had more of a gross income in 2009. And like the court in Street and Drish, the trial court should be looking at the monies that are coming into the household. Unlike child support, where you just look at the income of the parents, the trial court should also be looking at whatever other income that the parties have coming into the household. Where did I come up with the figure that the joint income of the wife and the new husband was $104,000? That's not right? Well, your Honor, where that may come from is what it was at the time of trial. In 2009, their joint was $117,000. Then she makes $52,600 and he, from his retirement, makes just under $4,000. I believe it's $3,928 per month. The court also looks to the expenses that each party has. And in the case at Barr, because of the agreement that Don had with regards to Nick, he does not have the cash flow to be paying that amount out every month. So he's been withdrawing money from his 401k in the approximate amount of $835 per month. And even when you take that into consideration, if you look at all of his expenses and the income that he has coming in, he has approximately $558 left over per month in money that he could be giving to Alex. However, if you look at Lori's affidavit, she admittedly has over $2,500 left over each month when you consider her income as well as Larry's and all of the expenses that they have. So in just looking at the money that they have left over on a monthly basis, income versus debt, Don has $558 and Lori and Larry have over $2,500, almost four times as much. Don is currently living in Peoria, but he also has a house up in the DuPage County area because of his employment. He has to be in the Naperville area approximately two weeks out of every eight weeks. And because of that, the tuition... Two weeks out of every what? I believe it's two weeks out of every eight weeks, or it could be six weeks. Anyhow, his job requires him to be within a certain distance of his employment up in Naperville. The tuition for Alex is approximately $28,000. However, because of the tuition incentive program that Western Kentucky offers, because Don has that apartment up in DuPage County, he is getting $10,000 off of his tuition. So off the top, because of Don's employment... Because that's an additional family expense that Western Kentucky takes into account? Is that why they do that? I'm not sure of all the ins and outs of Western Kentucky, but my understanding of the program was there are certain counties around the United States where it offers tuition adjustments if you live in certain counties. Oh, probably because of the cost of living. Correct. And so DuPage County was one of those counties where they would get a tuition break because he has that residence up there. So taking off the $10,000, that left $18,000 to be covered between the parties and the minor child. What the court did was allocated a third of it to Alex. So if we have $18,000, then right off the top, Alex is going to be paying for $6,000. That left $12,000 that needed to be shared between Lori and Don. If you look at just their incomes and not Larry's income, admittedly, Don makes twice as much as Lori. What the trial court ordered when the trial court was looking at that $12,000, he ordered Don to pay twice as much as Lori. Based upon that, we don't believe that the court looked at Larry's income at all, which would be an abuse of discretion like the court in Street and Drish have said. The opposing party will bring up, as in their brief, that Mr. Connelly... Did Alex live at any particular place when he was not in school? I'm sorry, did he live any... Alex, where did he live at? When he comes home? He had only been a half a year at that point of trial. He did come home and he lived with his mom for, I believe, a fall break and Thanksgiving. Then during Christmas, he'd spend a week with his dad up in the Chicago area. At the time of trial, he was with his mom. He was going to spend the rest of the break with his mother. So he spent most of his time with his mother? Yes, during that first half of the school year, correct. With regards to the 401K that Don has been taking money from, that's his retirement account, and he has over $300,000 in that. However, when you look at the rest of his expenses and his debts, he also has a house that has a mortgage of $153,000 and it's worth $155,000. In addition to that, he has got a home equity loan on top of that of $12,000, in effect making the house upside down. He then has another $12,000 home equity loan. If you look at her debts... Does he own the home in DuPage? No, he rents, Your Honor, it's $710 a month. So he rents an apartment? Correct. And gets a tuition credit for that? Correct. Which is good for everybody involved. He's getting $10,000 off. In effect, he's paying per year $8,620 in rent, but he's getting $10,000 off of the tuition. So it does work out for the parties, and it works out for Lori as well, because we're not looking at the $28,000, we're looking at $18,000. The debt that Lori has, she has a dental loan, an auto loan, and a mortgage. Not the type of debt that Don has with his cash flow situation. That's why he has been required to take money out of his 401k to be able to pay on the previous agreement that was entered by the court for Nick. With regards to attorney's fees, we also believe that that was an abuse of discretion in the court awarding Lori attorney's fees. Similar to what I mentioned before about the income of both parties, when you look at Lori's, she has the ability to pay her own attorney's fees. As the Selins report said, the attorney's fees are dependent on a showing of the party seeking to show an inability to pay. I don't believe she'd met this burden. In fact, as stated earlier, admittedly she had $2,500 left over every month after taking into consideration Larry's income, her income, and the expenses that she had. Based upon that, we believe that the court did abuse its discretion in the award of college expenses, and also in the award of attorney's fees. No other questions, thank you. We'll hear from you on rebuttal. May it please the court, counsel. My name is Jennifer Asher, and I represent the petitioner, appellee, Loriann Mitz. I'll refer to the parties also as Don and Loriann, as that's how I've referred to them in my brief. There's a few facts that I want to set straight. First of all, Loriann did contribute to Nick's college expenses. Her contribution came in the substantial reduction she took in child support in lieu of paying directly to Nick's school, Bradley University. Although there was no direct payment made to Bradley, Loriann essentially forwent a substantial sum of money, an increase in child support for Alex, rather than having the money come from Don to Loriann, Loriann to the college. They cut off that middleman. So Loriann did and does contribute to Nick's college expenses. Second, I want to correct the income that these parties have historically had.  Loriann and Larry married in 2007 and did not file a joint tax return. Loriann earned $56,000 that year. In 2008, when Larry was still working, Loriann and Larry earned $117,000 per year. And in 2008, Don earned $143,000. So the $117,000 comes in 2009. That was Loriann and Larry's combined income. When Larry retired in 2009, his income decreased. So from 2007, Don earned $130,000. Loriann earned $56,000. In 2008, Larry and Loriann earned $117,000 when Larry was still working. And then in 2009, Larry retired and their income combined reduced to $104,000 at the time of trial. And I'd also like to clarify a little bit the tuition waiver program. Western Kentucky University was a school that Alex chose based on his involvement in broadcasting in high school. He was an excellent student. He was president of student council. He was involved in the debate team. And he was also the sports director for the local high school news channel. And it was that interest that led him to start looking into broadcasting programs. He found Western Kentucky University. When Alex was researching, he saw that certain counties did offer tuition waivers. And as Ms. Gordon points out, all parties involved are glad that Don rents an apartment in DuPage County. Now when he was applying, DuPage County had recently been taken off the list of counties that offered this tuition program. But when Alex and Loriann went back to a, before college, went back for a visit, they spoke with a financial aid advisor. And it was Loriann and Alex that convinced the school to go ahead and still permit Alex to take advantage of this tuition waiver. So Loriann and Alex both also contributed to ensuring that this happened. The trial court did not abuse its discretion when ordering Don, who earns $111,000 per year, to pay $8,000 per year towards Alex's college expenses. You've made a reference to his salary. I suppose the trial court wasn't looking at income averaging, but the figures you've used for his salary are substantially different. Does it vary from year to year, apparently? He had recently taken a new job, and also that's what led to the apartment in DuPage County. The year before that, though, he was in the $140,000 plus range, and that drops to $111,000? Yes, and it was a result of me being fortunate to find a new job. I'm not certain if he was downsized, but it was a result of finding a new job. So it's not an income averaging scenario. The trial court realizes that Don has available to him $110,000 gross income each year. What the trial court also heard was evidence regarding what Don's expenses actually were. The trial court heard the evidence that Don alleged he paid $600 per month for food for just himself. The trial court heard the evidence that he has this home in Pekin that he pays $1,600 for while being required to have this apartment in DuPage County. So could a scenario work out where he has to give up his home in Pekin due to this new job? Absolutely. It was a relatively new job. Very soon it's possible he could sell that home and live solely in DuPage County. Also, the trial court heard the evidence regarding Don's monthly expense of $620 towards credit card debt and legal fees. The trial court oftentimes put parties in positions where they have to reallocate their expenses each month. My client should not be disadvantaged because she's been financially responsible with her income. Her financial affidavit reflects her household expenses, which were combined with her husband Larry's, and her personal expenses. Certainly, we could have presented evidence that she spends $250 a month on grooming, $75 a month on nails. She chooses not to do that. She is financially responsible with her money. And when we look at the available income counsel refers to as $2,400 for Laurieann and Larry. That's for Laurieann and Larry. Larry married Laurieann in 2007. His personal expenses, his contributions to any of his family members that he may make, he's retired, any activities or hobbies or anything that he wants to enjoy, are certainly not expenses that are reflected on Laurieann's financial affidavit. What we see with Laurieann's financial affidavit is that her monthly income alone would not support all of her household expenses. Her household expenses exceed her income. But she's able to pay those expenses because of Larry's income. Did you ask for attorney fees? I did ask for attorney fees. I asked for attorney fees in the amount of $1,495. Did you submit an affidavit in support thereof? I did. It was attached to my final pretrial memorandum. Laurieann's husband's retired. Laurieann is in a position where she will hopefully one day retire. She shouldn't be penalized for properly portioning her salary towards her expenses. Certainly $4,000 per year is a significant amount of money that she's contributing to Alex's expenses. Additionally, the court in Corte found that a parent's contributions to incidental expenses also can be considered with respect to how much each parent will pay towards expenses. It's Laurieann who took Alex to get the refrigerator, the microwave, the television, the bedding, all his dorm supplies. It's Laurieann and her husband Larry who contribute to Alex's vehicle, his new brakes, his new starter. All of that evidence was presented at trial. It's Laurieann and her husband Larry who contribute to Alex's gas money. It's Laurieann and Larry who Alex stays with on a majority of breaks. Don stopped paying child support in July of 2009. He did not pay again until this court ordered college expenses in January of 2010. During that period of time, as counsel stated, Alex stayed with his father for one week and was given $20. During that same period of time, it was Laurieann who paid all of the other expenses for Alex. It's Laurieann who pays Alex's cell phone bill. It's Laurieann who pays Alex's car insurance. So, although Laurieann is paying half of the amount to Western Kentucky University, she's also assuming many additional expenses that are incurred on a routine basis for Alex. Are those expenses something the trial court can appropriately consider? Those are expenses, according to the court in Ray Corte, that can be considered in an award of college expenses. Also, according to the court in Pearson, another consideration are the assets available to a party. We look at assets available. Don testified that he, in the trial court, actually questioned him during the trial Why are you taking money out of your IRA to pay for your older son's $835,000? Why are you doing this? You earn $110,000 a year. You shouldn't be taking those penalties. He didn't have an exact answer for that, kind of fumbled around. What we see from the home equity loan, from the credit card debt, is that perhaps Don's just not financially responsible. But again, trial courts are often placed in the position where they can make someone allocate resources for an expense. And that's exactly what 513 of the Illinois Marriage and Dissolution of Marriage Act permits the trial court to do, and what the trial court did. Before ordering a party to contribute to the other party's attorney's fees in the marital case as occurred here, does the court need to find that there is a disparity or even a substantial disparity between the financial resources of the parties? The court does not need to find that. The court just needs, according to Section 508 of the Illinois Marriage and Dissolution of Marriage Act, needs to consider the financial resources. And the 4th District in Mani, I believe it's pronounced, said that one party doesn't need to be destitute in order to receive an award of attorney's fees. Neither does the other party need to be in a position where they absolutely have the assets set aside to pay. And when we look at assets, Don has available in this IRA, which he already taps into, he already takes a penalty, $305,000. His financial affidavit initially reflected $211,000, but when we totaled up the balances at trial, it was actually $305,000. Whereas Lorianne has, for lack of a better word, defined benefits of $40,000 saved up through her deferred compensation with the State of Illinois, there's a great disparity of income there as well. Both parties do have pensions, values of which were not presented at trial. So although the trial court considers Don's resources when awarding attorney's fees and considers Lorianne's resources. And what we know is Lorianne's monthly expenses exceed her income based on her financial affidavit. But what the trial court also considered is how much should Larry have to contribute to those expenses. And the trial court did not abuse its discretion in finding that Lorianne should only contribute $4,000 per year towards Alex's college and that Don should contribute $8,000. Further, given the disparity in the party's income, $111,000 per year versus $56,000 per year, the trial court did not abuse its discretion in awarding Lorianne one half of her attorney's fees paid for at trial. Thank you. As far as Lori being financially responsible, Lori married another individual and now has two incomes coming to that house, an additional $48,000. Don does not have that. With regards to the expenses that Lori has been paying for Alex, all of that time when he was going to college, Don was paying all of Nick's expenses to go to college. So if you look at it, at one point, Lori has Alex and Don has Nick. They were each paying for their own expenses. With regard to the reallocation of debt that has been suggested by counsel and all of the debt that he has and that he is incurring and the income that he has coming in, if the court looks at the case of Luntz v. Taylor, in that case, because of what the court did in the allocation of assets, in effect left the father with hardly any assets to pay for college and the court came back and found he doesn't have income coming in to pay those assets. Likewise, in this case, we have his financial picture. We know what his financial picture is. We know that he is having to borrow money from his 401k just to meet the obligation of the previous court order for Nick. Did your opponent question whether he had to do that? Did he question whether he had to do that? There was, as Ms. Asher suggested, during the trail court, even the judge was questioning why he was doing that. His response was, although he didn't know all the ins and outs to the tax ramifications of that, he believed that at least up to $100,000 he would get some sort of break since it's being used for college expenses. And that's why he did it? And that's why he did it? In accordance with the record, yes. Judge Nardulli had asked him, wouldn't it have been better for you just to take out a loan? It would have been cheaper for you. At that point, I believe his response was something to the effect of he wasn't sure that he would look into that. I can't really answer beyond what was in the transcript at that time. Did your opposing counsel submit an affidavit in support of attorney fees at trial? Your Honor, to be honest, I wasn't the counsel at trial. Your counsel on appeal. I understand. I suspect if there was a problem, you would have raised that on appeal and you didn't. Correct. Thank you.